**AFFIRM; and Opinion Filed August 13, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00276-CV

### JUAN A. MARQUEZ AND GROUP PACIFIC HOLDINGS, LLC, Appellants
### V.
### FRED T. WEADON AND A&W FOODS ENTERPRISES, INC., Appellees

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-03271-2016**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Boatright
Opinion by Justice Boatright

Fred T. Weadon and A&W Foods Enterprises, Inc. filed a motion for sanctions against Group Pacific Holdings, LLC and its attorney. The trial court signed an Order granting the motion and ordered that Group Pacific pay a sanction to A&W in the amount of $11,250. The Order stated that attorney Juan Marquez was jointly and severally liable with Group Pacific for all sanctions awarded therein. In three issues, Group Pacific and Marquez contend that the trial court abused its discretion because the motion did not comply with statutory and other requirements, and the trial court did not properly weigh the evidence. We affirm.

### BACKGROUND

On August 2, 2016, Group Pacific initiated a lawsuit against Weadon and A&W by filing its original petition and a request for extraordinary relief seeking expedited discovery, a temporary

restraining order, temporary and permanent injunctions, and a declaratory judgment. In its petition, Group Pacific alleged that it was the owner of a commercial building located at 712 East Main Street, Allen, Texas 75002, and had leased the property to A&W for the operation of a Taco Casa restaurant. Under the terms of the lease agreement, A&W had a contractual right of first refusal to purchase the property at the same price and on the same terms as those agreed upon between Group Pacific and any third-party bona fide purchaser. The lease provides:

> If Landlord receives a bona fide third-party offer for the purchase of the Leased Premises, and Landlord desires to accept such offer, Landlord shall first notify Tenant of such offer, and the price and terms offered for the Leased Premises. The notice shall include an offer in writing to sell the Leased Premises to Tenant at a price and upon terms equal to those offered by the third-party. The Tenant shall have the option to purchase the Leased Premises upon such terms for a period of 30 days after receipt of this written offer.

Group Pacific alleged that it gave A&W notice that it had received an offer to purchase the property from a third-party and that A&W indicated that it would not be exercising its right to purchase the property. According to Group Pacific, A&W later reneged on its decision and claimed that it had not received the written notice required by the lease. Group Pacific alleged that A&W also refused to provide the prospective third-party purchaser with an estoppel certificate and a waiver of its right of first refusal in accordance with other lease provisions. Alleging that A&W was interfering with its sale to the third-party purchaser, Group Pacific's petition stated claims against A&W for misrepresentation under Texas Business and Commerce Code Section 27.01, interference with a contract, interference with prospective business relations, breach of the Texas Deceptive Trade Practices Act, and breach of contract.

Group Pacific's application for a temporary restraining order (TRO) urged that it was likely to recover from A&W because A&W's actions clearly violated the lease agreement. The application claimed that harm was imminent and incalculable, was solely the result of A&W's actions, and that Group Pacific stood to lose the contract for sale with a third-party for a price

substantially exceeding the amount A&W was willing to pay for the property. It also argued that the requested TRO would maintain the status quo and protect Group Pacific from further immediate irreparable harm pending the issuance of an injunction. The actions Group Pacific sought to enjoin included: (1) A&W's refusal to arbitrate all disputes between the parties; (2) A&W's refusal to comply with lease provisions, including the obligation to provide an estoppel letter to the prospective purchaser; and (3) A&W's refusal to admit that it had already exercised its right of first refusal by declining to purchase the property at the letter of intent price, and that it had no further right to match an offer to purchase from a third-party purchaser. The trial court granted Group Pacific's application for TRO on August 3, 2016, enjoining A&W from exercising its right of first refusal to purchase the property. Marquez was the attorney of record for Group Pacific on the date the petition was filed; Marquez signed the original petition and request for extraordinary relief.

A&W filed a motion to dissolve the TRO, and separately filed its answer, affirmative defenses, and a motion for sanctions. A&W's motion for sanctions stated that Group Pacific's original petition, including its applications for extraordinary relief, alleged claims, causes of action, and allegations against A&W that were false, fraudulent, frivolous, groundless and brought in bad faith, and groundless and brought for purposes of harassment in violation of Chapter 10 of the Texas Civil Practice and Remedies Code and Rules 13 and 215 of the Texas Rules of Civil Procedure. On August 18, 2016, the trial court conducted a hearing on Group Pacific's application for a temporary injunction to prevent A&W from exercising its right of first refusal. The court denied Group Pacific's application for a temporary injunction and dissolved the TRO.

On November 9, 2016, Group Pacific filed a notice of non-suit, dismissing without prejudice all claims asserted against A&W and Weadon, effective immediately. On November 10, 2016, the trial court filed an order of dismissal, which stated, "[t]his Order disposes of all parties

and all claims and is therefore final." A&W filed a motion for new trial and alternative motion to vacate, modify, correct, or reform the judgment, urging that the trial court's order was inaccurate and should be vacated or modified because A&W's motion for sanctions was pending at the time the order was signed. Group Pacific filed a response, arguing that A&W's motion was without merit and should be denied. Group Pacific also asserted that there was no basis on which the trial court should grant a new trial or modify its judgment because a trial court may still hear collateral matters, such as a motion for sanctions, until its plenary power expires.

The trial court conducted a hearing on A&W's motion for sanctions, and on December 12, 2016, signed an Order that granted A&W's motion for sanctions and ordered Group Pacific to pay A&W a sanction in the amount of $11,250. The court also ordered that Marquez was jointly and severally liable with Group Pacific for all sanctions awarded. Group Pacific and Marquez filed a motion for new trial and an alternative motion to vacate, modify, correct, rehear or reform the sanctions order. These motions were overruled by operation of law, and Group Pacific and Marquez filed this appeal.

## DISCUSSION

Appellants contend that the trial court should not have granted A&W's motion for sanctions because: (1) the motion did not comply with statutory requirements; (2) the motion did not comply with other requirements; and (3) the trial court did not properly weigh the evidence. We review a trial court's imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). We may reverse the court's ruling only if it acted without reference to guiding rules and principles to such an extent that the ruling was arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). If some evidence supports a court's decision to impose sanctions, we will not hold that it abused its discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). In reviewing sanctions orders, we

are not bound by the trial court's findings of fact and conclusions of law; instead, we independently review the entire record to determine whether the court abused its discretion. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006).

To determine whether a sanction was authorized, we first ascertain the basis for the sanction. When a sanction order refers to a specific rule, we are confined to determining whether the sanction imposed is authorized and appropriate under that particular rule. *Tarrant Restoration v. TX Arlington Oaks Apartments, Ltd*., 225 S.W.3d 721, 732 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.). Here, the order awarded sanctions pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 13. Sanctions imposed pursuant to both Chapter 10 and Rule 13 are reviewed under the abuse of discretion standard. *Low*, 221 S.W.3d at 614.

Generally, courts presume that pleadings and other papers are filed in good faith. *Id*. The party seeking sanctions bears the burden of overcoming this presumption of good faith. *Id*. Chapter 10 allows sanctions for pleadings filed with an improper purpose or that lack legal or factual support. Section 10.001 provides that the signing of a pleading constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, after reasonable inquiry: (1) the pleading is not being presented for any improper purpose, including to harass or cause unnecessary delay or needless increase in the cost of litigation; (2) each claim, defense, or legal contention is warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law, or the establishment of new law; (3) each factual contention has evidentiary support or is likely to have evidentiary support after reasonable investigation or discovery; and (4) each denial is warranted by the evidence or is reasonably based on a lack of information or belief. TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002). If a court determines that a pleading was signed in violation of Section 10.001, sanctions may be imposed on the signer, a party represented by the signer, or both. *Id*. § 10.004(a) (West 2002).

Rule 13 authorizes a trial court to impose sanctions against an attorney, a represented party, or both, who files a pleading, motion, or other paper that is groundless and either brought in bad faith or for the purpose of harassment. TEX. R. CIV. P. 13. A court may not impose sanctions under Rule 13 "except for good cause, the particulars of which must be stated in the sanction order." *Id*.; *Keith v. Solls*, 256 S.W.3d 912, 916 (Tex. App.—Dallas 2008, no pet.). The party seeking sanctions bears the burden of overcoming the good faith presumption under Rule 13, and must (1) demonstrate that the opposing party's filings are groundless, and (2) show that the pleadings were filed either in bad faith or for the purpose of harassment. *Mobley v. Mobley*, 506 S.W.3d 87, 94 (Tex. App.—Texarkana 2016, no pet.).

### *Compliance with Statutory Requirements*

Appellants first argue that A&W's motion for sanctions did not comply with statutory requirements because it was "bare bones" and failed to adequately describe the alleged misconduct. Further, appellants contend that they did not have actual notice of the allegations that were the basis of the motion and could not properly prepare a defense.

Under Section 10.002, when a party makes a motion for sanctions, they must describe the specific conduct that violated Section 10.001. TEX. CIV. PRAC. & REM. CODE ANN. § 10.002(a) (West. 2002). In its motion for sanctions, A&W argued that Group Pacific's original petition and requests for extraordinary relief violated Chapter 10 of the Texas Civil Practice and Remedies Code and Rules 13 and 215 of the Texas Rules of Civil Procedure. It asserted that Group Pacific alleged claims, causes of action, and allegations against A&W and Weadon in the petition and particularly in the requests for extraordinary relief that were false, fraudulent, frivolous, deceptive, misleading, without merit, groundless and brought in bad faith, and groundless and brought for purposes of harassment. A&W also urged that Group Pacific had taken advantage of the court and had improperly utilized the legal system to evade its contractual obligations under a commercial

landlord–tenant lease. The motion discussed sanctions contemplated by Chapter 10 and Rule 13, described the types of relief that could be awarded by the court in the event the court found that sanctions were appropriate, and requested that A&W and Weadon be dismissed from the lawsuit with prejudice and awarded all of their costs and attorney's fees. The motion also asked that an award of sanctions be imposed against Group Pacific and its counsel.

Section 10.003 provides that the court shall provide the non-movant with notice of the allegations and a reasonable opportunity to respond. TEX. CIV. PRAC. & REM. CODE ANN. § 10.003 (West. 2002). A&W filed a combined original answer, affirmative defenses and motion for sanctions in response to Group Pacific's original petition and request for extraordinary relief. The motion was filed on August 18, 2016, but the hearing did not take place until December 2, 2016. The record establishes that Group Pacific was served with a copy of the motion and had at least three months to respond.

A&W's motion did not point out each statement in Group Pacific's original petition and request for extraordinary relief that it claimed was false, deceptive, misleading, or without merit. However, A&W's motion clearly complained about the factual allegations made by Group Pacific in its original petition and, particularly, in its requests for extraordinary relief. The motion asserted that Group Pacific's pleadings were filed for the improper purpose of evading its obligations under the lease. And the motion stated that it was based on Chapter 10 and Rules 13 and 215. Group Pacific was able to file a comprehensive response objecting to A&W's motion and urging that A&W's motion failed to overcome the presumption that Group Pacific's pleadings were filed in good faith. Although Group Pacific argued that it did not have notice of the basis for A&W's motion, Group Pacific provided a timeline of events leading up to the date the petition was filed, supported by an affidavit of Mario Gonzalez, Group Pacific's manager, and argued that its interpretation of those events established that its petition was filed in good faith. Group Pacific

also asserted that its petition did not violate Chapter 10 because it took extreme care to include detailed, true facts that were verified by its representative.

We conclude that A&W's motion for sanctions described the specific conduct that it claimed violated Section 10.001 and, thus, the motion was legally sufficient under Section 10.002(a). We also conclude that Group Pacific had notice and a reasonable opportunity to respond to A&W's motion. We overrule appellants' first issue.

### *Compliance with Other Requirements*

In their second issue, appellants assert that A&W's motion failed to comply with other requirements that had to be satisfied in order to justify an order awarding sanctions. In particular, they complain that the motion failed to distinguish between offensive conduct attributable to Group Pacific and offensive conduct attributable to its attorney, Marquez. However, appellants fail to provide any authority for their contention that A&W was required to make such a distinction in its motion.

Instead, appellants cite to authority that the court should attempt to make that distinction. They quote *Nath v. Texas Children's Hospital*, in which the Texas Supreme Court instructs that "a court must attempt to determine whether the offensive conduct is attributable to counsel only, to the party only, or to both." 446 S.W.3d at 363. The Court acknowledged that apportioning blame between a represented party and its attorney would not be easy in many instances and stated "[t]he closeness that typically defines interaction between a litigant and his attorney not only binds their interests but may lend an overall opacity to the relationship that renders it difficult to determine where a party's input ends and where an attorney's counsel begins." *Id*. Notwithstanding this quotation from *Nath*, appellants present no argument that the trial court did not attempt to determine whether the offensive conduct was attributable to Group Pacific only, to Marquez only, or to both.

–8–

Appellants contend the record fails to show offensive conduct attributable to one appellant versus the other. We agree that some of the offensive conduct identified in the trial court's Order may be attributable to both appellants. However, the evidence presented at the sanctions hearing demonstrated offensive conduct by Group Pacific in failing to comply with its own lease agreement provisions to: (1) provide its tenant with proper notification of a prospective sale of the property to a third-party purchaser, and (2) give its tenant the thirty days mandated by the lease within which to exercise its right of first refusal. The evidence demonstrated offensive conduct by Marquez in claiming that A&W had breached the lease agreement, threatening immediate termination of the lease, and demanding that A&W pay $1,738,255.12 to avoid impending legal action, even though Marquez knew that A&W was not in breach of the lease. Marquez prepared, signed, and filed Group Pacific's original petition and request for extraordinary relief, including the application for TRO, and Mario Gonzalez, the manager of Group Pacific, verified that all the statements in the petition and request for extraordinary relief were true and correct. At the time the application for TRO was filed, Marquez and Gonzalez knew that A&W had not been given the thirty days mandated by the lease within which to exercise its right of first refusal to purchase the property at a price and upon terms equal to those offered by the third party purchaser. And Marquez and Gonzalez knew that A&W had not breached the lease agreement. The record demonstrates offensive conduct attributable to Group Pacific only, to Marquez only, and to both.

Appellants also argue that the court failed to distinguish between their actions and the actions of third parties. As an example, they point to the estoppel certificate and waiver of right of first refusal and contend that title company representatives—not appellants—prepared the documents and delivered them to A&W. However, the offensive conduct was not the preparation and delivery of the documents. The offensive conduct was appellants' demand that A&W sign the documents "as is," their accusation that A&W had defaulted on its lease obligations by refusing to

sign the documents "as is," and their threat to immediately terminate the lease if A&W would not sign the documents "as is." The estoppel certificate required A&W to certify that no uncured default, event of default, or breach by Group Pacific existed under the lease. Group Pacific and Marquez knew that A&W could not sign the estoppel certificate "as is" because there were uncured defaults by Group Pacific. They also knew that A&W could not sign the waiver of the right of first refusal "as is" because the waiver released A&W's right of first refusal regarding any future sales of the property, not just the instant one.

A&W's motion requested sanctions against both Group Pacific and its attorney, Marquez. Based on the evidence, the trial court did not improperly attribute offensive conduct by any third party to appellants. Furthermore, the trial court did not abuse its discretion in determining that the offensive conduct was attributable to both Group Pacific and Marquez. We overrule appellants' second issue.

### *The Trial Court Properly Weighed the Evidence*

In their third issue, appellants argue that the trial court did not properly weigh the evidence in this case. They contend that by granting A&W's motion for sanctions, the trial court ignored the presumption of good faith and disregarded overwhelming controverting evidence in the record that appellants filed their petition in good faith. Appellants describe the timeline of events leading up to the filing of the petition and argue that their interpretation of the evidence proves the petition was filed in good faith. However, the trial court's Order awarding sanctions focused on Group Pacific's application for TRO, not the petition.

In determining whether Rule 13 sanctions are appropriate, a trial court examines the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Elkins v. Stotts-Brown*, 103 S.W.3d 664, 668 (Tex. App.—Dallas 2003, no pet.). To impose sanctions under Section 10.001(1), or Rule 13, the court must hold an evidentiary hearing to make the

necessary factual determinations about the motives and credibility of the represented party or its attorney. *Gomer v. Davis*, 419 S.W.3d 470, 480 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

On December 2, 2016, the trial court conducted an evidentiary hearing on A&W's sanctions motion and considered testimony and evidence presented by the parties. Weadon presented evidence concerning the facts and evidence available to Group Pacific and the circumstances that existed when Marquez filed the petition. Weadon testified that his brother, Jon Albrecht, received an email from Group Pacific's real estate broker with a copy of a letter of intent between Group Pacific and a third-party purchaser. This email was admitted into evidence. The email did not include an offer to sell the leased premises to tenant at a price and upon terms equal to those offered by the third-party. Weadon testified that his brother responded that A&W would not be exercising their right of first refusal to purchase the property under the terms in the letter of intent.

According to Weadon, A&W received a letter from Marquez, dated July 30, 2016, that attached a copy of the purchase and sale agreement between Group Pacific and IVM Capital, LLC, the third-party purchaser. This letter was admitted into evidence. The letter notified A&W that Group Pacific had received a bona fide offer from a third party for purchase of the property, offered to sell the property to A&W on the same terms and price as those offered in the purchase and sale agreement, and attached a copy of that agreement. Weadon testified that this was the first time A&W received proper notice—as required by the lease—that offered A&W the opportunity to exercise its right of first refusal to purchase the property. He added that terms in the letter of intent were not the same as the terms in the purchase and sale agreement.

Weadon identified the estoppel certificate and waiver and release of right of first refusal that A&W was asked to sign "as is." He testified that he could not sign the estoppel certificate, as requested by Group Pacific, because there were uncured defaults by the landlord. He also could

–11–

not sign the waiver of the right of first refusal, as requested by Group Pacific, because the waiver released A&W's right of first refusal regarding any future sales of the property, not just the instant one. The original petition and request for extraordinary relief, together with supporting exhibits, were also admitted into evidence.

The court found that Group Pacific's application for TRO violated Section 10.001 of the Texas Civil Practice & Remedies Code because: (1) it was presented for an improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) there were factual allegations and other factual contentions in the pleading that lacked proper evidentiary support; and (3) there were factual contentions that were not warranted or supported by the evidence. When a trial court finds that sanctions are appropriate under Chapter 10, it must include in its order a description of the conduct that violated Section 10.001 and an explanation of the basis for imposition of the sanctions. TEX. CIV. PRAC. & REM. CODE ANN. § 10.005 (West 2002).

Here, the trial court found that in pages 5 through 9 of the application for TRO, Group Pacific and Marquez misrepresented when, how, and the manner in which they gave notice to A&W of the prospective sale of the property to a third-party purchaser. The court found that at the time the application for TRO was filed, Group Pacific and Marquez knew that the letter of intent emailed by their real estate broker to one of the A&W partners did not constitute a "written notice" pursuant to the terms of the lease agreement between the parties, and they also knew that the letter of intent did not trigger the commencement of A&W's thirty day period within which to exercise its right of first refusal. Nevertheless, in paragraph 5.11 of the application for TRO, Group Pacific represented that the deadline by which A&W was required to exercise its right of first refusal was June 9, 2016. The court found that Group Pacific and Marquez knew that this was not a true statement. The court's findings rely on the lease agreement setting out the requirements for a notice

of a prospective offer of sale from a third-party purchaser, the email from Group Pacific's real estate broker that attached the letter of intent but did not offer A&W the opportunity to purchase the property, the email from Albrecht stating that A&W would not be exercising its right of first refusal to purchase the property under the terms in the letter of intent, and the letter of intent from the prospective third-party purchaser.

The trial court found that Group Pacific and Marquez knew that the terms of its purchase agreement with the third-party purchaser differed substantially from the terms set out in the letter of intent. However, they did not provide A&W with written notice of the price and terms of the prospective sale of the property, with an offer to A&W to purchase the property "at a price and upon terms equal to those offered by the third party" until, at the least, July 30, 2016. The court found that at the time they filed the application for TRO, Group Pacific and Marquez knew that A&W had not been afforded thirty days within which to exercise its right of first refusal in accordance with the lease requirements. The court's findings rely on the letter of intent from the prospective third-party purchaser, the purchase and sale agreement between Group Pacific and IVM Capital, LLC, the third-party purchaser, and Marquez's letter, dated July 30, 2016, offering A&W the opportunity to purchase the property.

The trial court found that Group Pacific and Marquez knew that A&W could not sign the tenant estoppel and waiver of right of first refusal in their "as is" condition. Thus, their allegation in the application for TRO that A&W was in breach of the lease by not signing these documents was false, misleading, groundless, and in bad faith. Both documents were admitted into evidence and Weadon testified that A&W could not sign them "as is."

The trial court ordered Group Pacific to pay a sanction to A&W in the amount of $11,250, the amount of attorney's fees incurred in connection with Group Pacific's Application for TRO and A&W's motion for sanctions. The court further ordered that Marquez is jointly and severally

liable with Group Pacific for all sanctions awarded. At the hearing, counsel for A&W testified that $11,250 was a reasonable and necessary fee for legal services provided to defend A&W at the hearing on Group Pacific's application for temporary injunction, to dissolve Group Pacific's temporary restraining order, and to prepare for the sanctions hearing.

After reviewing the entire record, including the timing and substance of the various pleadings and the testimony at the sanctions hearing, we conclude that there is some evidence to support the trial court's decision to impose sanctions. Therefore, we conclude that the trial court did not abuse its discretion in granting A&W's motion for sanctions. Since the sanctions order is sustainable under Section 10.001, we need not address appellants' challenges to other possible bases for the sanctions award. *Law Offices of Windle Turley, P.C. v. French*, 164 S.W.3d 487, 492 (Tex. App.—Dallas 2005, no pet.). We overrule appellants' third issue.

## CONCLUSION

Having overruled appellants' issues, we affirm the trial court's Order.

/Jason Boatright/
_____
JASON BOATRIGHT
JUSTICE

170276F.P05

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JUAN A. MARQUEZ AND GROUP
PACIFIC HOLDINGS, LLC, Appellants

No. 05-17-00276-CV     V.

FRED T. WEADON AND A&W FOODS
ENTERPRISES, INC., Appellees

On Appeal from the 219th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 219-03271-2016.
Opinion delivered by Justice Boatright.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the trial court's Order Granting Defendants' Motion For Sanctions is **AFFIRMED**.

It is **ORDERED** that appellees FRED T. WEADON and A&W FOODS ENTERPRISES, INC. recover their costs of this appeal from appellants JUAN A. MARQUEZ and GROUP PACIFIC HOLDINGS, LLC.

Judgment entered this 13th day of August, 2018.